IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,        )
                                 )
           Plaintiff,            )
                                 )
     v.                          )        1:14CV942
                                 )
$240,100.00 in U.S. CURRENCY,    )
                                 )
           Defendant.            )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

The United States of America ("Plaintiff" or the

"Government") brought a civil forfeiture proceeding against

$240,100.00 in U.S. currency (the "Defendant Property"). (Doc.

1.) Claimant Shunika Hemingway Henderson ("Claimant") filed a

Verified Notice of Claim and Answer. (Docs. 5, 6.) Presently

before the court is the Government's Motion for Summary

Judgment. (Doc. 25.) Claimant has responded in opposition (Doc.

29), and the Government has replied (Doc. 30). For the reasons

that follow, the motion will be granted.

**I. FACTUAL ALLEGATIONS**

The following facts are presented in the light most

favorable to Claimant:

The Durham Police Department ("DPD") began making controlled purchases of small quantities of crack cocaine from Anthony Henderson ("Henderson"), Claimant's husband, beginning in 2011. (Pl.'s Br. in Supp. of Summ. J. ("Pl.'s Br."), GE A, Declaration of David M. Walker ("Walker Decl.") (Doc. 26-2) ¶ 4.) In April 2014, a DPD officer used a confidential informant to make two controlled purchases of $20 worth of crack cocaine from Henderson at his body shop business in Durham. (Pl.'s Br., GE B, Declaration of Brian T. Black ("Black Decl.") (Doc. 26-3) ¶ 3.) On May 1, 2014, DPD officers executed a search warrant for the body shop. (Id. ¶ 4.) DPD officers searched Henderson and found a set of keys in his pockets, which were used to unlock the office in the business. (Id. ¶ 5.) DPD officers also found a single key in Henderson's pocket that fit the lock to a locked drawer of a desk in the office. (Id. ¶ 7.) Inside the drawer was a loaded 9mm Taurus handgun, various pill bottles, and two plastic bags containing a substance that later tested positive for crack cocaine. (Id. ¶ 5; Walker Decl. (Doc. 26-2) ¶ 14.) The five employees present on the premises were also searched and none of their keys were found to fit the drawer's lock. (Black Decl. (Doc. 26-3) ¶ 7.)

During the search of the body shop, DPD officers also brought a certified narcotics detection canine to perform an

exterior sniff of a Ford F-150 truck parked in the business
parking lot. (Pl.'s Br., GE C, Declaration of Kelly Stewart
("Stewart Decl.") (Doc. 26-4) ¶¶ 1, 4.) The truck had been seen
at Henderson's residence earlier that day. (Black Decl. (Doc.
26-3) ¶ 4.) The canine positively alerted to the presence of an
illegal narcotic odor on the passenger side door of the truck.
(Stewart Decl. (Doc. 26-4) ¶ 4.)

Also on May 1, 2014, DPD officers executed a search warrant
for Henderson's residence. During the search, Claimant arrived
at the residence with her attorney. (Pl.'s Br. at 4; Black Decl.
(Doc. 26-3) ¶¶ 8, 9.) DPD officers located a safe in the master
bedroom closet. (Id. ¶ 9.) Inside the safe, officers found
$240,100.00 in U.S. currency, all of which was in $100 bills
wrapped in rubber bands. (Id. ¶ 10; Pl.'s Br., GE H, Deposition
of Shunika Hemingway Henderson ("Claimant's Dep.") (Doc. 26-9)
at 41.)[1] Officers seized and sealed the $240,100.00 in currency
in front of Claimant and her attorney; it was later taken to the
Raleigh DEA Office where it was secured. (Walker Decl. (Doc.
26-2) ¶ 19.)

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

On April 11, 2016, Henderson pleaded guilty in Durham County Superior Court to possession with intent to distribute, in violation of N.C. Gen. Stat. § 90-95(a)(1). (Pl.'s Br., GE L, Doc. 26-13 at 3.) Henderson received a suspended sentence for twelve months of supervised probation. (Id. at 4.) He was also ordered to "forfeit all seized property and contraband." (Id.)

For the tax years 1999 through 2010, Henderson reported income ranging from $11,586 to $33,734. (Pl.'s Br., GE I (Doc. 26-10) at 6, 9, 14.) In 2001 and 2002 Henderson filed jointly with Claimant wherein the total income reported was $34,249 and $37,219. (Id. at 6.) Henderson's income came from his business, rental properties, and interest. (Doc. 26-10.) Henderson did not provide more recent tax returns, but testified that his recent income "probably just went up a little bit." (Pl.'s Br., GE G, Deposition of Anthony Henderson ("Henderson Dep.") (Doc. 26-8) at 12.)

Claimant's reported income from 2008 to 2014 ranged between $28,940 and $36,850. (Pl.'s Br., GE J (Doc. 26-11).) Her job as a probation/parole officer has been her only source of income since 2004. (Pl.'s Br., GE F, Interrogatories Directed to Claimant (Doc. 26-7) at 9.)

In addition to Henderson's reported income, he testified he earned money landscaping and doing "side tows" towing cars, but

he could not estimate how much he earned or present any documentation to evidence this income. (Henderson Dep. (Doc. 26-8) at 4-10.) Claimant stated in her Interrogatories that in addition to Henderson's body shop business, Henderson was moonlighting by painting cars. (Doc. 26-7 at 7.) Henderson testified he put some of these earnings in the bank and some he put in the safe or gave to Claimant to put in the safe. (Henderson Dep. (Doc. 26-8) at 17.) Henderson testified that he did not make any money from selling drugs. (Id. at 28-29.)

At the time of Henderson's arrest, Claimant was driving a BMW 7 Series, with a current tax value estimated at \$23,530. (Id. at 33; Doc. 26-7 at 11.) Henderson testified that he purchased the BMW using insurance money from a totaled Mercedes, money from selling another Mercedes, and cash from his business. (Henderson Dep. (Doc. 26-8) at 34-39.) Henderson testified that Claimant never asked him where the cash came from. (Id. at 39.)

Henderson also owned a 2004 Cadillac Escalade, a 2009 BMW 7 Series, and a 2011 Ford F-150. (Id. at 14, 41-42.) He testified he paid for these with money saved from either his body shop, landscaping, or towing. (Id. at 15.) As for other household expenses, Henderson testified that he and his wife split the mortgage (id. at 31-32), and that he also paid for groceries, kids' clothes, and dental bills (id. at 41).

Claimant testified that Henderson had paid the full $1,900 monthly mortgage since 2009. (Claimant's Dep. (Doc. 26-9) at 23-24.) Claimant also testified that since approximately 2008, Henderson paid household expenses such as food, necessities, kids' clothes, utility bills, and the full mortgage, as well as paying approximately $600 per month in child support to another woman. (Id. at 6-7, 20-21.) Claimant testified that her expenses exceed her income. (Id. at 56.)

Henderson testified that he bought the safe. (Henderson Dep. (Doc. 26-8) at 24.) However, he testified that Claimant was also putting money in the safe. (Id. at 20-21, 30.) Claimant testified that she bought the safe but she never used it and never put any money into it. (Claimant's Dep. (Doc. 26-9) at 27-28, 44.) She further testified she saw the safe open only once or twice in the early 2000s. (Id. at 29.) She testified she never questioned Henderson about the safe or asked how much money was in it. (Id. at 30-31, 39, 45.) Claimant was aware that Henderson had nice cars and that he paid for them with cash but this did not cause her any concern and she did not ask him where the cash came from. (Id. at 47-51.)

Claimant was a probation/parole officer in Durham from 2004 to 2013, and has been a supervising officer since 2013. (Id. at 9-10.) During that time, she has supervised drug offenders and

is familiar with the drug scene in Durham. (Id. at 11.) She is
aware that cocaine is a big issue in Durham, and she has
supervised parolees who sold crack cocaine. (Id. at 12-13.)
Claimant has performed searches of parolees when something
triggered suspicion, such as the parolees being around a certain
crowd or if the parolees were wearing expensive things even
though they were not working. (Id. at 15, 17.)

Claimant testified that she would go to the body shop every
day up until Henderson was arrested. (Id. at 34.) The body shop
was in a drug-infested area, and Claimant believed some of the
employees may have had a chemical addiction but she never
expressed any concerns about it to Henderson. (Id. at 35-38.)

Claimant and Henderson separated on May 19, 2014, following
his arrest. (Id. at 26-27.) They are not divorced, nor is there
any agreement regarding the marital property division. (Id. at
57-59.)

When asked if she was confident that the Defendant Property
was not drug money from Henderson dealing drugs, she responded,
"With [Henderson] taking that plea, no, I can't say that." (Id.
at 60.)

## II. **LEGAL STANDARD**

Summary judgment is appropriate where an examination of the
pleadings, affidavits, and other proper discovery materials

before the court demonstrates that no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts;" the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations omitted) (quoting Fed. R. Civ. P. 56(e)). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine dispute as to a material issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Nonetheless, the court must ensure that the facts it considers can be "presented in a form that would be admissible in evidence" and that any affidavits or evidence used to support or oppose a motion are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the

- 8 -

affiant or declarant is competent to testify on the matters stated." See Fed. R. Civ. P. 56(c)(2), (4).

The court must view the facts in the light most favorable to the nonmoving party, drawing inferences favorable to that party if such inferences are reasonable. Anderson, 477 U.S. at 255. However, there must be more than a factual dispute, the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## III. **ANALYSIS**

The Government raises three issues: (1) whether Claimant lacks standing to assert her claim contesting forfeiture; (2) whether the Defendant Property is forfeitable; and (3) whether Claimant, if she has standing, can establish that she is an innocent owner of the Defendant Property. (See Pl.'s Br. (Doc. 26) at 9-10.)

### A. **Whether Claimant has Standing to Contest Forfeiture**

In the civil forfeiture context, a claimant must establish both constitutional and statutory standing. United States v. $7,000.00 in U.S. Currency, 583 F. Supp. 2d 725, 729 (M.D.N.C. 2008). The Government asserts that Claimant cannot demonstrate

Article III/constitutional standing, prudential standing, or statutory standing to bring her claim. (Pl.'s Br. (Doc. 26) at 10.)

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies." U.S. Const. art. III, § 2. For Article III standing to exist, the claimant must be injured, and a federal court must be able to redress the injury. CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011). To contest a government forfeiture action, the claimant "must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." United States v. Munson, 477 F. App'x 57, 62 (4th Cir. 2012) (unpublished). Stated another way, Claimant must have a "legally cognizable interest in the property that will be injured if the property is forfeited to the government"; this injury must be "real and immediate, and not conjectural or hypothetical." $7,000.00 in U.S. Currency, 583 F. Supp. 2d at 729 (internal citations and quotations omitted).

Prudential standing has been said to encompass several judicially-created limits on federal jurisdiction, including "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of

generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. ____, ____, 134 S. Ct. 1377, 1386 (2014) (internal quotation marks and citations omitted). However, the Supreme Court "clarified that the zone of interests concern refers to an issue of statutory authorization, the generalized grievance concern an issue of 'constitutional' dimensions, and the third-party standing concern an issue that is 'harder to classify.'" United States v. Under Seal, 853 F.3d 706, 722 n.5 (4th Cir. 2017) (quoting Lexmark, 134 S. Ct. at 1387 & n.3).

Statutory standing concerns whether a statute has accorded this particular injured plaintiff the right to sue the defendant to redress the injury, or "whether the plaintiff 'is a member of the class given authority by a statute to bring suit.'" CGM, 664 F.3d at 52 (quoting In re Mutual Funds Inv. Litig., 529 F.3d 207, 216 (4th Cir. 2008)). "[T]he touchstone for [statutory] standing is the possession of a legal interest in the forfeited property." United States v. Oregon, 671 F.3d 484, 490 (4th Cir. 2012) (appeal of criminal forfeiture proceeding). "[I]f a petitioner has not asserted a 'legal interest' in property subject to forfeiture," then the "petition should be dismissed

- 11 -

on the issue of standing." United States v. Alquzah, 91 F. Supp. 3d 818, 825 (W.D.N.C. 2015).

Claimant bears the burden of establishing standing to pursue her claim by a preponderance of the evidence. United States v. 998 Cotton St., Forsyth Cty., N.C., No. 1:11-CV-356, 2013 WL 1192821, at *5 (M.D.N.C. Mar. 22, 2013). Claimant asserts she has an interest in the Defendant Property because it is marital property.[2] (Claimant's Mem. in Opp'n to Mot. for Summ. J. ("Claimant's Resp.") (Doc. 29) at 1-2.) The Government asserts that Claimant does not have a legal interest in the Defendant Property, and therefore, does not have standing. (Pl.'s Br. (Doc. 26) at 11.) Legal interests in property are generally determined pursuant to state law. Oregon, 671 F.3d at 490; 998 Cotton St., 2013 WL 1192821, at *6. Accordingly, this court will examine North Carolina law on this issue.

Claimant admits that she never put money in the safe and that the Defendant Property belonged to Henderson. (Claimant's Dep. (Doc. 26-9) at 27-28, 44.) However, Claimant asserts that

---

[2] The requirement that a claimant establish an ownership interest in the defendant property as part of her § 983 innocent ownership affirmative defense to forfeiture is distinct from her duty to establish that she has standing to contest the forfeiture. A claimant may have standing without being an owner of the property. United States v. Munson, 477 F. App'x 57, 67 n.10 (4th Cir. 2012).

she has a marital interest in the Defendant Property because, under North Carolina's equitable distribution statute, marital property consists of "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation." N.C. Gen. Stat. § 50-20(b)(1); (Claimant's Resp. (Doc. 29) at 1.) Claimant asserts that she has an interest in the Defendant Property because it is marital property, and because pursuant to § 50-20(a), she has a right to an equitable distribution of marital property. N.C. Gen. Stat. § 50-20(a).

The right to an equitable distribution is a statutory right, not a legal right to any specific piece of marital property. The classification of property as marital property "does not give one spouse an equitable title to or an interest in the separately-owned property of the other. Courts interpreting North Carolina's equitable distribution statutes have uniformly reached this conclusion." In re Halverson, 151 B.R. 358, 362 (Bankr. M.D.N.C. 1993). "While the effect of the [statute] is to give the non-title[d] spouse an equitable claim in marital property, it does not displace the traditional principles of property ownership." Hagler v. Hagler, 319 N.C. 287, 290, 354 S.E.2d 228, 232 (1987); 998 Cotton St., 2013 WL 1192821, at *6.

Although pursuant to § 50-20(k), this statutory right vests at the time of separation, it "does not create a property right in marital property. Nor does the separation create a lien on specific marital property in favor of the spouse." Hearndon v. Hearndon, 132 N.C. App. 98, 101, 510 S.E.2d 183, 185 (1999) (citations omitted). This statute creates only "a right to the equitable distribution of that property, whatever a court should determine that property is." Wilson v. Wilson, 73 N.C. App. 96, 99, 325 S.E.2d 668, 670 (1985). However, in the absence of an equitable distribution under § 50-20, the ownership rights of either spouse or both spouses is unaffected – nothing in the statute creates a new form of ownership. See Hagler, 319 N.C. at 290, 354 S.E.2d at 232.

This "approach by North Carolina courts has been applied by [a federal district] court in a forfeiture proceeding under 21 U.S.C. § 881(a) and 18 U.S.C. § 983(d)." 998 Cotton St., 2013 WL 1192821, at *7. In United States v. 1999 Starcraft Camper Trailer, VIN # 1SABS02R8X1UR3942, No. 1:05CV273, 2006 WL 2921722 (M.D.N.C. Oct. 10, 2006), the claimant asserted an ownership interest in a camper trailer arguing that it was marital property as defined by North Carolina's equitable distribution statute. Id. at *3. The court rejected this argument stating that "the equitable distribution statue does not create a

- 14 -

substantive property right in marital property. [The claimant] cannot establish that she is an owner of the Camper simply because it would be classified as marital property if the [claimant and her husband] were to separate and seek equitable distribution of their marital property." Id. at *4. Because the claimant could not establish that she was an owner of the camper, her claim of ownership was dismissed. Id.

Similarly, in this case, Claimant concedes that the Defendant Property is not her money, but asserts an ownership interest to it through her marriage to Henderson. Claimant and Henderson have separated, but there is no evidence that there has been an equitable distribution or that an equitable distribution will take place. (Claimant's Resp. (Doc. 29) at 6.) Claimant's assumption that her expectancy in an equitable distribution claim to marital property gives her an ownership interest in the Defendant Property is a conclusion not supported by North Carolina law.[3] "Her argument incorrectly equates a claim for equitable distribution with an ownership interest in

---

[3] Claimant also asserts that because she may be due post-separation support, alimony, or child support in a later state court action, she should be able to assert rights to the Defendant Property. (Answer (Doc. 6) ¶ 10; Claimant's Resp. (Doc. 29) at 6.) These possible future claims under Chapter 50 of N.C. Gen. Stat. likewise do not give Claimant an ownership interest or property right in specific marital property or in the Defendant Property.

- 15 -

property. . . . Under N.C. Gen. Stat. § 50-20, [it has been] consistently held that an equitable distribution claim is not a property right in specific marital property." Kroh v. Kroh, 154 N.C. App. 198, 201, 571 S.E.2d 643, 645 (2002). Consequently, because Claimant lacks a legal ownership interest in the Defendant Property, she lacks standing to contest its forfeiture.

## B.   **Whether Defendant Property is Subject to Forfeiture**

Although this court concludes that Plaintiff lacks standing, the Government still must demonstrate that the Defendant Property is subject to forfeiture. Property that may be subject to civil forfeiture to the United States is found in 18 U.S.C. § 981. Section 983 of Title 18 sets forth certain rules governing civil forfeiture proceedings. The Government bears the initial burden of proof to establish by a preponderance of the evidence that the property in question is subject to forfeiture. 18 U.S.C. § 983(c). If the theory of forfeiture "is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the Government must also establish that there was a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). This court must look to the totality of the circumstances to determine

whether the Government has met its burden. United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) (applying earlier probable cause standard but noting that courts must avoid evaluating evidence in isolation). If the Government makes an initial showing that the Defendant Property is properly subject to forfeiture, the burden then shifts to Claimant to establish the affirmative defense of innocent ownership by a preponderance of the evidence. 18 U.S.C. § 983(d); Munson, 477 F. App'x at 65-66.

The Government contends the Defendant Property is subject to forfeiture under either 21 U.S.C. § 881(a)(6), which allows for forfeiture to the United States for "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance [and] all proceeds traceable to such an exchange," or 18 U.S.C. § 981(a)(1)(C), for "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18])." (See Pl.'s Br. (Doc. 26) at 15-16.) Section 1956(c)(7) incorporates "any act or activity constituting an offense listed in section 1961(1)," which includes dealing in a controlled substance or any offense involving the felonious manufacture, importation, receiving, concealment, buying, selling, or

otherwise dealing in a controlled substance. 18 U.S.C.
§§ 1956(c)(7), 1961(1).

"The government may rely on circumstantial evidence to
establish forfeitability." United States v. Herder, 594 F.3d
352, 364 (4th Cir. 2010) (discussing substantial connection test
in criminal forfeiture proceeding). Moreover, "[p]roceeds need
not be tied to any particular identifiable drug transaction."
998 Cotton St., 2013 WL 1192821, at *13 (citing United States v.
1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 n.4 (9th Cir.
1985)). "Under the substantial connection test, . . . [a]t
minimum, the property must have more than an incidental or
fortuitous connection to criminal activity", but it need not be
"integral, essential or indispensable" to that activity. United
States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990)
(discussing forfeiture of real property). "A common sense
reality of everyday life is that legitimate businesses do not
transport large quantities of cash rubber-banded into
bundles . . . ." United States v. $242,484.00, 389 F.3d 1149,
1161 (11th Cir. 2004); see also United States v. Puche-Garcia,
No. 99-1612, 2000 WL 1288181 (4th Cir. Sept. 13, 2000)
(unpublished). "Insufficient legitimate income to explain
expenditures, along with evidence of drug trafficking, is
evidence of property derived illegally." 998 Cotton St., 2013 WL

1192821, at \*13 (citing cases). "The mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." United States v. 94,200.00 in U.S. Currency, Civil No. 1:11CV00609, 2012 WL 2885129, at \*6 (M.D.N.C. July 13, 2012) (quotations omitted).

The Government has satisfied its burden that there is a substantial connection to criminal activity for purposes of forfeiture. DPD made several controlled purchases of crack cocaine from Henderson beginning in 2011. Later, in 2016, Henderson pled guilty to possession with intent to distribute. Henderson's assertion that he did not make any money from selling drugs is taken with great skepticism. As the Government pointed out, it is a "common sense recognition that drug dealing is a dangerous and often violent enterprise," United States v. Smith, 914 F.2d 565, 567 (4th Cir. 1990), and it is implausible to believe that Henderson engaged in such activities without financial gain. Claimant also concedes that some of the money may be drug money. (Claimant's Resp. (Doc. 29) at 5.)

The record demonstrates illegal drug activity by Henderson, and the documentation presented revealed expenditures exceeding Henderson's legitimate income. See United States v. Funds in

- 19 -

Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F.3d 448, 468-69 (7th Cir. 2005) (finding totality of circumstances supported summary judgment where seized funds and expenditures exceeded stated income and no documentation or other proof was offered to account for this discrepancy). Henderson's reported income was at most $33,734 and $37,219 jointly, but he had monthly expenditures of a $1,900 mortgage, a $600 child support obligation, additional expenses for his children with Claimant, as well as car expenses, groceries, utilities, and other household expenses. Although Claimant and Henderson testified that Henderson had other sources of income, they provided no supporting documentation. See United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) (affirming forfeiture where "evidence of legitimate income [was] insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership"). Evidence that Henderson's expenditures exceeded his verifiable legitimate income, along with the possession of an unusually large amount of cash rubber-banded into bundles and hidden in a bedroom closet suggests that the Defendant Property was derived illegally. See United States v. $63,289.00 in U.S. Currency, No. 3:13-cv-00281-FDW-DCK, 2014 WL 2968555, at *5-6

(W.D.N.C. July 1, 2014); United States v. $2,500 in U.S.
Currency, 689 F.2d 10, 16 (2d Cir. 1982) (acknowledging that "[a
large] quantity of cash is [not] commonly kept in residential
premises by law-abiding wage earners"). Therefore, this court
concludes that the totality of the record demonstrates
sufficient evidence to establish by a preponderance of the
evidence a substantial connection between the Defendant Property
and illegal drug activity to allow for forfeiture.

Having determined that the Defendant Property is
forfeitable, this court must address Claimant's argument that
the forfeiture violates the excessive fines clause of the Eighth
Amendment to the Constitution of the United States. (Claimant's
Resp. (Doc. 29) at 10-11.) This court first notes that Claimant
did not raise this defense in her Answer, initially raising it
in her response to Plaintiff's motion for summary judgment. As a
general rule, affirmative defenses are waived if they are not
pled in a responsive pleading as required by Federal Rule 8(c).
See Fed. R. Civ. P. 8(c)(1); RCSH Operations, L.L.C. v. Third
Crystal Park Assocs. L.P., 115 F. App'x 621, 629 (4th Cir.
2004). However, an affirmative defense not asserted in an answer
or motion is not automatically waived, but requires a showing of
prejudice or unfair surprise, neither of which the Government

has argued. S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir. 2003).

Pursuant to 18 U.S.C. § 983(g), any person claiming an interest in the seized property may petition the court to determine whether the forfeiture was constitutionally excessive. This court has found that Claimant lacks an ownership interest in the Defendant Property and lacks standing to contest its forfeiture. Therefore, Claimant likely lacks standing to challenge the forfeiture on grounds that it is an excessive fine. See United States v. Cochenour, 441 F.3d 599, 601 (8th Cir. 2006). However, even if Claimant had standing to petition the court on such grounds, she has not carried her burden.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. A forfeiture of property violates the Excessive Fines Clause of the Eighth Amendment if it is grossly disproportional to the gravity of the offense. 18 U.S.C. § 983(g); see also United States v. $79,650.00 Seized from Bank of Am. Account Ending in 8247, 650 F.3d 381, 388 (4th Cir. 2011), as corrected (June 2, 2011) (citing United States v. Bajakajian, 524 U.S. 321, 336 (1998)). The burden is on the party challenging the constitutionality of the forfeiture to demonstrate

excessiveness. 18 U.S.C. § 983(g); see also United States v. Ahmad, 213 F.3d 805, 816 (4th Cir. 2000).

Here, Claimant has not carried her burden on this point. Claimant has offered no legal argument or evidence demonstrating why the forfeiture would be an excessive fine. Claimant has failed to provide any substantive legal analysis that would support this court finding in her favor. Claimant has not even acknowledged the criteria this court must consider to make a finding that a forfeiture is grossly disproportionate. This court therefore finds Claimant has failed to carry her burden and has not presented any argument to support a finding that the forfeiture would violate the Excessive Fines Clause of the Eighth Amendment.

## C. **Whether Claimant is an Innocent Owner**

Claimant asserts that she is an innocent owner of the Defendant Property pursuant to 18 U.S.C. § 983(d). (Answer (Doc. 6) ¶¶ 16-17; Claimant's Resp. (Doc. 29) at 3.) Claimant has the burden of proving she is an innocent owner by a preponderance of the evidence. 18 U.S.C. § 983(d)(1). An "owner" for purposes of § 983(d) is "a person with an ownership interest in the specific property sought to be forfeited." 18 U.S.C. § 983(d)(6)(A). The term "owner" has been construed "'to include any person with a recognizable legal or equitable interest in the property

seized.'" 998 Cotton St., 2013 WL 1192821, at \*6 (quoting United States v. 92 Buena Vista Ave., 937 F.2d 98, 102 (3d Cir. 1991)). An innocent owner is one who "did not know of the conduct giving rise to forfeiture" or "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

Claimant admitted that the money in the safe was not hers, but asserts an ownership interest in the Defendant Property as marital property. Because this court finds that Claimant lacks an ownership interest in the Defendant Property as marital property, as previously discussed, she is not an "owner" and therefore cannot be an "innocent owner" pursuant to 18 U.S.C. § 983. See 998 Cotton St., 2013 WL 1192821, at \*9; Munson, 477 F. App'x at 67 (citing Stefan D. Cassella, The Uniform Innocent Owner Defense to Civil Asset Forfeiture, 89 K.Y. L.J. 653, 672 (2001), for proposition that if the claimant cannot establish that she has an ownership interest, her innocence is irrelevant). Even if Claimant was an owner of the Defendant Property, she has failed to prove the "innocent owner" affirmative defense as required by 18 U.S.C. § 983(d)(1). Claimant acknowledges that she "foolishly" trusted Henderson. (Claimant's Resp. (Doc. 29) at 8.) She admits that she never

questioned Henderson about the safe or about where the cash came from to purchase her BMW or the other cars or household expenses. Despite her knowledge of Henderson's business and despite her years of experience as a probation/parole officer, she never expressed any concerns to Henderson.

Taken in its totality, Claimant's explanation is too coincidental and implausible. See $63,289.00 in U.S. Currency, 2014 WL 2968555, at *7 ("False, conflicting or implausible explanations undermine a claimant's credibility and justify any fact-finder's skepticism."). Claimant's acceptance of Henderson's spending and dealings in cash "with little or no explanation of the source of money strongly suggests that she . . . was willfully blind to [Henderson's] illegal source of income." Id. Willful blindness is "a well-settled principle of law where knowledge of a fact may be inferred where an individual deliberately closes their eyes to what would otherwise be obvious." Id. As such, Claimant has failed to satisfy her burden of proving she is an innocent owner.

**IV. CONCLUSION**

This court finds that the Government established by a preponderance of the evidence that the Defendant Property is subject to forfeiture and that Claimant failed to satisfy her burden in proving the innocent owner defense. **IT IS THEREFORE**

**ORDERED** that the Government's Motion for Summary Judgment (Doc. 25) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the $240,100.00 in U.S. Currency shall be and is **HEREBY FORFEITED** to the United States pursuant to 21 U.S.C. § 881(a)(6).

A judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 25th day of May, 2017.

William L. Osteen, Jr.
_____
United States District Judge